IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JUSTIN LEON WALKER,
    Petitioner,

v.                                           Civil No. 3:23cv388 (DJN)

DIRECTOR HAROLD CLARKE,
    Respondent.

**MEMORANDUM OPINION**

Justin Leon Walker, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1), challenging his convictions in the Circuit Court of Hampton, Virginia (hereinafter, "Circuit Court"). Respondent has moved to dismiss on the grounds that Claim One lacks merit, Claims Two and Three are barred from review here, and Claim Four is not cognizable in habeas. Walker has filed a response. (ECF No. 15.) As explained below, the Motion to Dismiss (ECF No. 9) will be GRANTED, and the § 2254 Petition (ECF No. 1) will be DENIED.

## I.    PROCEDURAL HISTORY

After a jury trial, Walker was convicted of forcible sodomy, attempted rape, attempted object sexual penetration and aggravated sexual battery. *See Commonwealth v. Walker*, No. 13–897–00 through –03, at 1 (Va. Cir. Ct. June 9, 2017). The jury recommended a sentence of sixty-six years of incarceration, and the Circuit Court imposed that sentence. *Id.* at 2.

Walker appealed. In his Petition for Appeal that he filed in the Court of Appeals of Virginia, Walker raised the following claim:

> The trial court erred in forcing Walker to undergo trial without an attorney where:
> 1) Walker never waived his right to an attorney; 2) Walker did not ask to be allowed
> to represent himself; 3) Walker clearly asserted he wanted an attorney to represent

him; and 4) Walker was constitutionally entitled to the assistance of an attorney as his trial.

(ECF No. 10–2, at 19 (citations omitted).)[1]  A single judge of the Court of Appeals of Virginia denied the petition for appeal. (*Id.* at 53.)  However, a three-judge panel of the Court of Appeals of Virginia granted the petition for appeal. (*Id.* at 61.)  After oral argument, the Court of Appeals of Virginia affirmed the Circuit Court. *Walker v. Commonwealth*, 839 S.E.2d 123, 124 (Va. Ct. App. 2020).  The Supreme Court of Virginia refused Walker's subsequent petition for appeal. (ECF No. 10–3, at 39.)

Walker filed a petition for a writ of habeas corpus in the Circuit Court. (ECF No. 10–4, at 5–10.)  On December 27, 2022, the Circuit Court denied the petition. (*Id.* at 14–15.)  The Circuit Court mailed the order to the facility where Walker was housed, instead of the centralized mail address for all Virginia Department of Corrections inmates, and therefore the mail was returned by the United States Postal Service. (ECF No. 10, at 3–4; ECF No. 10–4, at 19.)  The Clerk remailed the order on February 2, 2023. (ECF No. 10–4, at 19.)  Walker received the denial of his habeas petition on February 10, 2023. (*Id.* at 17.)  Walker then filed a Notice of Appeal in the Circuit Court on February 24, 2023. (*Id.* at 16.)[2]

On March 23, 2023, Walker filed his Petition for Appeal in the Supreme Court of Virginia. (ECF No. 10–5, at 2.)  Subsequently, on March 24, 2023, Walker filed a Motion for an Extension of Time for Notice of Appeal in the Supreme Court of Virginia. (*Id.* at 21.)  In his Petition for Appeal, Walker raised the following two assignments of error:

---

[1]     The Court employs that pagination assigned by the CM/ECF docketing system to citations to the record.  The Court corrects the spelling, punctuation and capitalization in the quotations from Walker's submissions.

[2]     At the same time, Wilson also filed a Motion for Extension of Time to file an appeal; however, he mailed that motion to the Circuit Court instead of the Supreme Court of Virginia. (ECF No. 10–4, at 17–18.)

> The Circuit Court erred by determining that petitioner constructively waived his right to counsel and proceeded to trial pro se in violation of clearly established federal law thereby violating Petitioner's 6th and 14th Amendment rights to a fair trial and right to counsel.
>
> The Circuit Court erred by determining that petitioner's lack of legal knowledge to exercise strikes on jurors is also of his own doing due to his "constructive" waiver of counsel.

(*Id.* at 3.)  On July 12, 2023, the Supreme Court of Virginia denied his motion for an extension of time to file a notice of appeal, because "it was not filed within 30 days of the December 27, 2002 final order in the circuit court, or within the 30-day extension period permitted under Rule 5:5(a)."  (*Id.* at 41 (citation omitted).)  The Supreme Court of Virginia also found that, pursuant to Supreme Court Rule 5:9(a), "the appeal was not perfected in the manner provided by law because [Walker] failed to timely file the notice of appeal within 30 days of the December 27, 2022 final order in the circuit court" and dismissed the petition for appeal.  (*Id.*)

Walker's § 2254 Petition was received in the United States District Court for the Western District of Virginia, and it was subsequently transferred to this Court.  (ECF No. 1.)  In his § 2254 Petition, Walker argues that he is entitled to relief based upon the following claims:

Claim One:   "The petitioner is unlawfully detained because he was not afforded counsel at trial, violating the 6th and 14th Amendments." (*Id.* at 5.)

Claim Two:   "Petitioner was not tried by an impartial jury in violation of 6th and 14th Amendments." (*Id.* at 7.)

Claim Three: "Petitioner's detention is unlawful because he was not afforded due process of law, violating the 5th and 14th Amendments.  The Commonwealth amended the indictments at a pretrial hearing which violated the 5th Amendment and the Supremacy Clause." (*Id.* at 8.)

Claim Four:  "My detention is unlawful because I have been denied my right to access the courts, violating the 1st Amendment." (*Id.* at 10.)

## II.   CLAIM FOUR IS NOT COGNIZABLE IN HABEAS

As a preliminary matter, in Claim Four, Walker contends that he was denied access to the courts.  Walker argues that he:

> had no access to the law library during the pendency of my time to file [his] state
> habeas. [He] filed a precautionary petition so as not to miss [his] filing deadline
> and now [he is] being denied reasonable access to the court through the court's
> refusal to address the claims that [he has] now had the time to research.

(ECF No. 1, at 10.) Although Walker contends that this fact pattern makes his detention

unlawful, he raises a claim that is not cognizable by way of habeas corpus. "[T]he settled rules

[provide] that habeas corpus relief is appropriate only when a prisoner attacks the fact or

duration of confinement, *see Preiser v. Rodriguez*, 411 U.S. 475 (1973); whereas, challenges to

the conditions of confinement that would not result in a definite reduction in the length of

confinement are properly brought" by some other procedural vehicle, including a 42 U.S.C.

§ 1983 complaint. *Olajide v. B.I.C.E.*, 402 F. Supp. 2d 688, 695 (E.D. Va. 2005) (citing *Strader*

*v. Troy*, 571 F.2d 1263, 1269 (4th Cir. 1978)). In Claim Four, Walker contends that a person or

persons acting under color of state law deprived him of a constitutional right or of a right

conferred by a law of the United States, i.e., a denial of access to the courts. *See Dowe v. Total*

*Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C.

§ 1983). Therefore, Claim Four sounds in 42 U.S.C. § 1983,[3] as opposed to habeas corpus. If

Walker wishes to pursue Claim Four, he must do so through a civil rights action under § 1983.

Accordingly, Claim Four is DISMISSED.

---

[3]     That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects,
> or causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an action
> at law . . . .

42 U.S.C. § 1983.

### III.   EXHAUSTION AND PROCEDURAL DEFAULT

**A.   Standard for Exhaustion and Default**

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n.10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). Fair presentation demands that "both the operative facts and the controlling legal principles" must be presented to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v.*

5

*Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been

exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner.

*Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of

procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides

that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a

state procedural rule, and that procedural rule provides an independent and adequate ground for

the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.*

(citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also

procedurally defaults claims when the "petitioner fails to exhaust available state remedies and

'the court to which the petitioner would be required to present his claims in order to meet the

exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*,

501 U.S. at 735 n. 1).[4] The burden of pleading and proving that a claim is procedurally defaulted

rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing

cases). Absent a showing of "cause for the default and actual prejudice as a result of the alleged

violation of federal law," or a showing that "failure to consider the claims will result in a

fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim.

*Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

**B.     Claims Two and Three are Barred From Review Here**

To exhaust his claims, Walker was required to fairly present these claims to the Supreme

Court of Virginia. Walker did not raise Claim Three before the Supreme Court on direct appeal

---

[4]     Under these circumstances, even though the claim has not been fairly presented to the
Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*,
443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

or in his appeal from the denial of his habeas petition by the Circuit Court. If Walker now attempted to raise Claim Three in the Supreme Court of Virginia, any new habeas petition would be barred as untimely and successive pursuant to section 8.01–654(A)(2)[5] and (B)(2)[6] of the Virginia Code. Va. Code Ann. § 8.01–654(A)(2) and (B)(2) constitute adequate and independent procedural rules when so applied. *Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000); *Mackall v. Angelone*, 131 F.3d 442, 446 (4th Cir. 1997); *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006). Thus, Claim Three is procedurally defaulted. Further, Walker fails to demonstrate any cause and prejudice for his default or a fundamental miscarriage of justice.

With respect to Claim Two, Walker raised this claim in his petition for appeal in the Supreme Court of Virginia. However, the Supreme Court of Virginia found Walker's notice of appeal untimely under Supreme Court Rule 5:9(a), and therefore, dismissed his petition for appeal on procedural grounds.[7] Rule 5:9(a) constitutes an adequate and independent procedural

---

[5]   This statute provides:

> A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code Ann. § 8.01–654(A)(2) (West 2023).

[6]   This statute provides:

> Such petition shall contain all allegations the facts of which are known to petitioner at the time of filing . . . . No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition.

Va. Code Ann. § 8.01–654(B)(2) (West 2023).

[7]   The Rule states in relevant part: "No appeal shall be allowed, unless, within 30 days after the entry of final judgment or other appealable order or decree . . . appellant files with the clerk of the trial court a notice of appeal . . . ." Va. Sup. Ct. R. 5:9(a) (West 2023).

rule when so applied. *Wise v. Williams*, 982 F.2d 142, 143–44 (4th Cir. 1992) (citations omitted). Once again, Walker fails to demonstrate cause to excuse his default of Claim Two and resulting prejudice, or a fundamental miscarriage of justice.[8]

Accordingly, Claims Two and Three are barred from review here and will be DISMISSED.

### III.   THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may

---

[8]   Walker makes no arguments with respect to cause and prejudice or a fundamental miscarriage of justice. Nevertheless, the record suggests that Walker could argue that the cause for the default of Claim Two is that the Circuit Court mailed the order denying his habeas petition, dated December 27, 2022, to the incorrect address, causing him a delay in receipt of the order. However, the Supreme Court of Virginia reviewed this argument in determining whether his appeal was untimely and found it unpersuasive. The record shows that Walker received the state habeas order on February 10, 2023. (ECF No. 10–4, at 17.) This was forty-six days after entry of the order. Although Walker filed a notice of appeal in the Circuit Court on February 24, 2023, that notice of appeal was untimely. Walker was required to seek an extension of time from the Supreme Court within thirty days after the expiration of the appeal period. Walker did not file a motion to extend the appeal period in the Supreme Court of Virginia until he mailed that motion on March 21, 2023. (*Id.* at 38.) Although Walker filed a request for an extension of time in the Circuit Court on February 24, 2023, that was the incorrect court to request such an extension. Thus, Walker failed to file an extension of time with the Supreme Court of Virginia during the time period permitted by Supreme Court of Virginia Rule 5:5(e). Walker's own delay in filing a motion for extension of time was the cause for the default of Claim Two. *See Coleman*, 501 U.S. at 722 (explaining that "'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot be fairly attributed to him").

8

not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state

court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a

federal court believes the state court's determination was incorrect but whether that

determination was unreasonable — a substantially higher threshold." *Schriro v. Landrigan*, 550

U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Given this standard,

the decisions of the Virginia courts with respect to Walker's claim figure prominently in this

Court's opinion.

## IV.    DENIAL OF RIGHT TO COUNSEL

In Claim One, Walker argues that he "is unlawfully detained because he was not afforded

counsel at trial, violating the 6th and 14th Amendments." (ECF No. 1, at 5.) Walker contends:

> The Commonwealth repeatedly tried to appoint lawyers who refused to defend the
> petitioner by filing meaningful motions and challenges to the Commonwealth's
> case in chief. Because the petitioner repeatedly asked the court for an attorney who
> would represent him instead of prosecuting him, the court declared that he had
> "constructively" waived counsel. That decision is contrary to clearly established
> law settled by the U.S. Supreme Court. *Iowa v. Tovar*, 541 U.S. 77 (2004).

(*Id.*)

### A.    The State Court Concluded This Claim Lacks Merit

The Court of Appeals of Virginia extensively examined this claim and summarized the

facts underlying this claim as follows:

Appellant was indicted for the four felonies on November 4, 2013, and, on the same day, the trial court appointed two attorneys from the Office of the Public Defender (counsel #1) to represent him.[9]   On January 28, 2014, counsel for appellant filed a motion to withdraw, asserting that appellant's stated intent to file bar complaints against the two assistant public defenders who had been assigned to represent him created an "adversarial relationship" between client and counsel making further representation of him impossible.  The trial court granted the motion and appointed James Gochenour (counsel #2) to represent appellant.

Soon thereafter, Gochenour moved to withdraw.  The trial court initially denied the motion, however, at a hearing on May 16, 2014, appellant requested new counsel, stating to the trial court that, "I can't use no lawyer that's a liar and unprofessional . . . I'm entitled to a lawyer that's going to represent me not prosecute me."  Ultimately, the trial court relieved Gochenour and appointed J. Robert Harris, III (counsel #3) to represent appellant.

On June 5, 2014, Harris filed a motion to withdraw as counsel.  In the motion, Harris stated that appellant "desires to represent himself and requests to have J. Robert Harris, III serve as" standby counsel.  On June 11, 2014, the trial court, in a written order, stated that the appellant's conduct constituted a "constructive discharge of counsel or a *de facto* waiver of counsel" and appointed Harris as standby counsel for trial.

On February 13, 2015, the trial court relieved Harris as standby counsel.  At that time, appellant indicated that he wished to have a new attorney appointed to represent him.  The trial court appointed David Dildy (counsel #4) to represent appellant and continued the matter for a jury trial.

On April 14, 2015, Dildy filed a motion to withdraw, informing the trial court that a "conflict has developed between [appellant] and his counsel such that the counsel is ethically constrained to ask the [c]ourt for leave to withdraw."  The trial court granted the motion, and, on April 24, 2015, appointed Stephen K. Smith (counsel #5) to represent appellant.

On August 27, 2015, Smith filed a motion to withdraw, informing the trial court of appellant's wish to proceed *pro se*.  On September 4, 2015, the trial court allowed Smith to withdraw.  In the same order, the trial court appointed David Tichanski (counsel #6) to represent appellant.

On November 30, 2015, Tichanski, citing "ethical conflicts" that he was not able to disclose, filed a motion to withdraw as counsel.  The trial court took the matter under advisement until a psychological evaluation of appellant could be completed.  The trial court held a hearing on March 16, 2016, and Tichanski renewed his motion to withdraw.  Tichanski informed the trial court that appellant would not speak to him, that appellant already had filed a bar complaint against him, and that appellant "is asking me to do certain things that I'm ethically prohibited from doing . . . ."  In denying Tichanski's request, the trial court posed the question, "Won't that be the case with anybody that we appoint, then . . . ?"  Counsel responded that, although he did not know what the answer to that question was, he knew that he could no longer effectively represent appellant.  Tichanski

---

[9]   Although two attorneys from the Office of the Public Defender were assigned to appellant, we treat the appointment of the office as the appointment of one counsel/attorney.

added that appellant vacillated between wanting counsel and wanting to proceed *pro se*, with appellant's thoughts on the topic changing "from day-to-day."

Appellant informed the trial court that he had brought the bar complaint to court with him and demanded yet another lawyer, declaring "I'm not dealing with" Tichanski. After some contentious discussion with appellant about whether to set the case with or without a jury, the trial court indicated it would set the case for a jury trial. Appellant responded, "You need to get this man off my case that's what you need to do. . . . You need to get that cracker off my case, how about that? Yeah, I know you don't like that, do you? . . . Red neck ass nigger. Fuck that, man." The trial court eventually scheduled the matter for a jury trial to commence on October 18, 2016.

The trial court brought the parties back for a hearing on April 1, 2016. Noting appellant's combative behavior since the beginning of the proceedings, along with the multiple attorneys the trial court had appointed who "didn't work" for appellant, the trial court finally allowed Tichanski to withdraw, stating to appellant that his behavior and language had created a situation where Tichanski could not effectively represent appellant. The trial court stated to appellant, "I'm not appointing another lawyer. You have every right to hire someone to represent you, but based on my review of your history -- your procedural history in this case, you have effectively waived your right to be appointed a lawyer to represent you. You're going to have to represent yourself[.]"

On September 27, 2016, the trial court convened a hearing. At that hearing, the trial court informed appellant that, despite its prior ruling, it had reconsidered and would grant appellant's previous request for appointment of yet another counsel. The trial court informed appellant that it was appointing Tyrone Johnson (counsel #7) as his counsel. In introducing appellant to Johnson, the trial court both encouraged appellant to cooperate with Johnson and warned of the consequences of a lack of cooperation, stating from the bench

> But I need to just remind you that it's real important that you cooperate with your counsel. Mr. Johnson has been appointed to help you with this case. So you need to cooperate with him and refusal to cooperate with your counsel can result in you waiving your right to court-appointed counsel.

The trial date ultimately was rescheduled for March 6, 2017. In setting the date, the trial court noted that the case had been continued nearly thirty times and informed the parties that the case would be tried on March 6, 2017.

On February 13, 2017, Johnson, citing a conflict of interest, moved the trial court for leave to withdraw. At the February 15, 2017 hearing on Johnson's motion, the Commonwealth raised concerns, stating

> that the defendant has acted in a dilatory manner because I think he uses the bar complaint to force an attorney to have to get out of the case or he acts in a manner that would force the defense attorney to be unable to properly prepare for the case.

In granting Johnson's motion, the trial court agreed with the Commonwealth that appellant's conduct amounted to a deliberate delay strategy and concluded that appellant had waived his right to counsel. The trial court explained from the bench that

> [m]y conclusion is that [appellant] has, in fact, waived his counsel or right to a counsel by his behavior. And I concur totally with what [the prosecutor] said. The use of the bar complaints, refusal to come out and talk to his lawyer, to ask his lawyer to make frivolous motions, all of that. . . . By the way, I had this discussion with him the last court hearing. So . . . you're now representing yourself in this case.

The trial court appointed Gregory Bane (counsel #8) as standby counsel for appellant's jury trial occurring on March 6 and 7, 2017. Before trial, appellant made it clear to the trial court that he did not desire standby counsel, and Bane informed the trial court that appellant would not communicate with him. Appellant represented himself at trial and was convicted of all offenses.

This appeal followed.[10]

*Walker v. Commonwealth*, 839 S.E.2d 123, 124–126 (Va. Ct. App. 2020) (omissions and alterations in original except altered footnote numbers). The Court of Appeals of Virginia then aptly explained as follows:[11]

> On appeal, appellant argues he was denied his constitutional right to the assistance of counsel. His constitutional challenge raises a question of law that we review de novo. *Huguely v. Commonwealth*, 63 Va. App. 92, 106-07, 754 S.E.2d 557 (2014).

> I. The Sixth Amendment right to counsel and waiver
> In pertinent part, the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defen[s]e." This Sixth Amendment guarantee "is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986). It mandates that a defendant have a fair opportunity to secure counsel of his own choice to represent him, *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932), or, if a defendant is indigent, that representation be made available to him by the court, *see Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
> The Sixth Amendment right to counsel also "implicitly embodies a 'correlative right to dispense with a lawyer's help[,]'" *Faretta v. California*, 422 U.S. 806, 814, 95 S.Ct. 2525, 2530, 45 L.Ed.2d 562 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268

---

[10]     We note that, after appellant's convictions, the trial court appointed yet another lawyer, Charles Haden (counsel #9), to represent appellant on appeal.

[11]     Because the Supreme Court of Virginia summarily refused Walker's petition for appeal, the Court presumes that the Supreme Court of Virginia refused the claims for the reasons stated by the Court of Appeals of Virginia. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

(1942)), and thus, it can be waived. Due to the fundamental nature of the right, the burden of proving waiver falls upon the Commonwealth. *Lemke v. Commonwealth*, 218 Va. 870, 873, 241 S.E.2d 789 (1978).

To be valid, any such waiver must be the voluntary act of the defendant and must constitute a knowing and intelligent abandonment of a known constitutional right or privilege. *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981). The waiver of the right to counsel need not be express; it may be inferred from a defendant's conduct. *McNair v. Commonwealth*, 37 Va. App. 687, 696, 561 S.E.2d 26 (2002) (*en banc*).

> As we previously have stated regarding waivers by conduct,
> the Sixth Amendment right to counsel, while fundamental, is not a right without limitation. Specifically, it is not a right subject to endless abuse by a defendant. Instead, the right is qualified in its exercise and merely affords a defendant an absolute right to a fair opportunity to representation by counsel. This limitation derives from the important and valid state interest in proceeding with prosecutions in an orderly and expeditious manner, taking into account the practical difficulties of assembling the witnesses, lawyers, and jurors at the same place at the same time as well as the concerns and interests of the victims, witnesses and general public, and the appropriate use of judicial resources.

*Bailey v. Commonwealth*, 38 Va. App. 794, 803, 568 S.E.2d 440 (2002) (internal quotation marks omitted) (quoting *McNair*, 37 Va. App. at 695, 561 S.E.2d 26). "To establish a *de facto* waiver or a constructive discharge, Virginia law requires that we view the defendant's conduct in its entirety, together with all the other circumstances of the case, that support the conclusion his or her conduct tended to unreasonably and unjustifiably delay trial." *Id.*

## II. Appellant's conduct as waiver

The record makes clear that the trial court provided appellant with more than "a 'fair opportunity' to representation by counsel." *Id.* Although such a conclusion is amply supported by the mere fact that the trial court appointed not one, but eight, counsel to either represent appellant fully or serve as his standby counsel, focusing solely on the magnitude of that number misses part of the story.

Despite appellant's behavior making clear that its efforts were futile, the trial court repeatedly attempted to provide him with the benefit of counsel. It did so despite appellant vacillating between representing himself or wanting counsel. It did so despite having continued the matter nearly thirty times for delays largely attributable to appellant and his inability to work with counsel. It did so despite appellant developing a conflict with every lawyer who was appointed to represent him. It did so despite (and after) appellant engaged in a profanity-laced tirade in open court in response to the trial court's initial decision not to remove a lawyer, a decision that the trial court magnanimously revisited and reversed. It did so by continuing to appoint counsel for appellant after finding that he had waived that right in June 2014 and again in April 2016. Even after finding for the third and final time that appellant had waived his right to counsel, the trial court sought to provide him the benefit of the assistance of standby counsel, whose assistance appellant effectively rejected by refusing to communicate with him. Finally,

13

underscoring its commitment to providing appellant the opportunity to enjoy the benefits of counsel, the trial court, as noted above, appointed counsel on eight occasions during the proceedings below to either represent appellant fully or serve as his standby counsel despite what can only be characterized as appellant's repeated, intentional attempts to sabotage both counsel's ability to represent him and the judicial process. In short, the trial court's actions demonstrated that it did more than a bare minimum to provide appellant with the benefit of his Sixth Amendment right to assistance of counsel; it went the proverbial extra mile and then some.

The record also reflects that appellant tried his case *pro se* not because the trial court failed to safeguard his Sixth Amendment right, but rather, because appellant knowingly waived that right by his voluntary, intentional actions. Viewing the totality of the circumstances, the record amply supports the trial court's conclusion that appellant's development of conflicts with each and every counsel it had appointed constituted an abuse of the system and was part of an intentional strategy of delay employed by appellant. *See id.* (recognizing that the Sixth Amendment right to counsel is waived by conduct that is designed "to unreasonably and unjustifiably delay trial" and amounts to an "abuse" of the system).

Once again, although amply demonstrated by the sheer number of conflicts appellant developed with every one of the attorneys appointed, the specifics of appellant's conduct leave no doubt that the development of such conflicts was part of a dilatory strategy and represented an abuse, not an assertion, of the Sixth Amendment guarantee. Particularly illuminating was appellant's performance at the March 16, 2016 hearing. Faced with the trial court's initial rejection of his request to replace yet another counsel, appellant went on a profane tirade against his then attorney in an attempt to force the trial court to grant his request. He punctuated it by inquiring of the trial court "Yeah, I know you don't like that, do you?[,]" which, in context, can only be viewed as an attempt by appellant to seize control of the proceedings and to provoke the trial court, not just to anger, but to capitulate to his demand for yet another new lawyer.

Moreover, appellant's behavior did not occur in a vacuum. He was well aware that his conduct could result in his loss of counsel, yet he continued to engage in the abusive, dilatory behavior anyway. In its June 11, 2014 order, the trial court found that appellant had waived the right to counsel; however, the trial court revisited that decision and appointed yet another counsel.

On April 1, 2016, at the first hearing after appellant's profane tirade, the trial court granted appellant's wish and removed Tichanski from the case, but also informed appellant that, by his conduct, he had waived his right to court-appointed counsel. Again, in an abundance of caution and providing far more protection for appellant's Sixth Amendment right than is constitutionally required, the trial court ultimately revisited that decision and appointed yet another attorney for appellant.

In doing so, the trial court warned appellant that any further issues imperiled his right to counsel. From the bench, the trial court told appellant that "it's real important that you cooperate with your counsel. [He] has been appointed to help you with this case. So you need to cooperate with him and *refusal to cooperate with your counsel can result in you waiving your right to court-appointed counsel.*" (Emphasis added).

14

Despite the warning, appellant again "developed" a conflict with counsel. Having been warned repeatedly that such continued behavior would result in the loss of court-appointed counsel, appellant knew that he was forfeiting his Sixth Amendment right. Because the totality of the circumstances demonstrates that appellant, despite knowing the consequences, intentionally engaged in abusive behaviors for the purpose of delaying and disrupting the proceedings, the trial court reasonably concluded that appellant had knowingly and intelligently waived his right to counsel. Accordingly, the trial court did not commit reversible error.

### III. Appellant's mistaken reliance on *McNair*

Although acknowledging that a defendant can waive his right to counsel by conduct, appellant argues that his conduct did not constitute a waiver in this case. Specifically, he argues that our decision in *McNair* dictates that we reverse the trial court's judgment. We disagree.

In *McNair*, we reversed a trial court's finding that a defendant forfeited his right to counsel, concluding that the record was insufficient to support such a finding. 37 Va. App. at 699, 561 S.E.2d 26. We noted that "the trial court did not set forth the reasons for its determination that McNair waived his right to counsel[,]" *id.* at 697, 561 S.E.2d 26, and that the record did not include a "factual finding that the defendant's difficulty with his various attorneys amounted to a pattern of conduct calculated to prevent his trial from ever occurring," *id.* at 698, 561 S.E.2d 26. Although we expressly stated that "a failure to explicitly address the basis for its conclusion . . . would not *per se* constitute reversible error[,]" *id.* at 697, 561 S.E.2d 26, we noted "the better practice would be" for a trial court "to produce a record which reflects that (1) the defendant placed his counsel in a position that precluded effective representation and thereby constructively discharged his counsel or (2) through his obstructionist behavior, dilatory conduct, or bad faith, the defendant *de facto* waived counsel," *id.* at 697–98, 561 S.E.2d 26.

Here, the record suffers from no such deficiencies. The trial court's reasons for concluding that appellant had waived his right to counsel are apparent from the record. The trial court found that appellant's repeated development of conflicts with counsel was part of a strategy of delay. The record leaves no doubt that, by his conduct, appellant "placed his counsel in a position that precluded effective representation," *id.* at 697, 561 S.E.2d 26, on multiple occasions with multiple lawyers. Similarly, the record clearly establishes that appellant also engaged in "obstructionist behavior, dilatory conduct, or bad faith" that constituted a "*de facto* waive[r of] counsel," *id.* at 698, 561 S.E.2d 26, and the trial court so found.

Furthermore, this record demonstrates that appellant knew his conduct jeopardized his right to continued counsel and engaged in that conduct anyway. On three occasions, the trial court found that appellant had waived his right to counsel. On two of those occasions, it relented and appointed new lawyers despite the previous findings of waiver. Between the second finding of waiver and the final finding of waiver, the trial court made certain that appellant was aware that further shenanigans could forfeit his right to counsel, yet appellant continued the same abusive pattern. Given the trial court's repeated admonitions and warnings, the trial court reasonably concluded that appellant, by his conduct, was knowingly waiving his right to counsel and the record more than amply supports that conclusion.

Ultimately, nothing we said in *McNair* and nothing we say today alters the relevant underlying standard applicable to waivers of counsel by conduct. The record in each such case must establish that, by his voluntary and intentional conduct, a defendant knowingly and intelligently waives his right to counsel. The record does so here because it amply demonstrates that appellant's conflicts with counsel were the result of voluntary and intentional conduct designed to delay and obstruct the proceedings and that appellant knew of the potential consequences of engaging in that conduct. Accordingly, the judgment of the trial court is affirmed.

*Walker*, 839 S.E.2d. at 126–29 (alterations and omissions in original). The Court discerns no

unreasonable application of the law or an unreasonable determination of the facts. *See* 28 U.S.C.

§ 2254(d)(1)–(2). Rather, little discussion is needed here, because the Court of Appeals of

Virginia's decision was imminently reasonable.[12]

"The Sixth Amendment guarantees to a criminal defendant the right to the assistance of

counsel before he can be convicted and punished by a term of imprisonment." *United States v.*

*Ductan*, 800 F.3d 642, 648 (4th Cir. 2015). Nevertheless, "the belated creation by a defendant of

an inextricable ethical predicament for counsel . . . can properly be viewed as a constructive

discharge of counsel undertaken for dilatory or unreasonable purposes . . . ." *United States v.*

*Attar*, 38 F.3d 727, 735 (4th Cir. 1994). During the pendency of his criminal proceedings in the

Circuit Court, Walker had eight attorneys represent him. Because of Walker's obstreperous

behavior, these proceedings stretched from 2013 until 2017. Walker's behavior throughout the

course of the litigation and his treatment of the many attorneys who represented him, when

viewed in its totality, reflects that it was not unreasonable to determine that Walker

constructively waived counsel.

---

[12]    The Court of Appeals of Virginia also found that Walker had constructively waived the right to counsel under Virginia law. Given that Walker's claim is also highly dependent on Virginia law, Walker fails to demonstrate any prejudice. *Cf. Richardson v, Branker*, 688 F.3d 128, 141 (4th Cir. 2012) ("When a [Sixth Amendment] claim raised in a habeas corpus petition involved an issue unique to state law, . . . a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law.")

The record reflects that Walker would not have cooperated with any attorney who was appointed or hired to represent him. Walker's abusive and combative behavior toward the attorneys who represented him, his refusal to discuss his case with them and his creation of conflict with his attorneys as a dilatory tactic, standing alone, demonstrated Walker's constructive waiver of appointed counsel. Moreover, Walker was placed on notice in 2014, and again in 2016, that his conduct amounted to a constructive waiver of counsel. (*See* ECF No. 10–14, at 9–10.) After both of those explicit findings, the Circuit Court nevertheless appointed Walker counsel. However, Walker still did not modify his behavior. Even after a third hearing in 2017 where the Circuit Court again found that Walker had "in fact, waived his counsel or right to a counsel by his behavior" (ECF No. 11–3, at 6), the Circuit Court still appointed Walker with standby counsel. (ECF No. 11–4, at 1.) In sum, the Court finds no unreasonable application of law or determination of fact in the state court's conclusion that Walker constructively waived his right to counsel through his behavior.[13] Accordingly, Claim One lacks merit and will be DISMISSED.

## V.    CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 8) will be GRANTED. Walker's Motion to Stay and Abey His § 2254 Proceeding because his appeal was pending (ECF No. 2) will be DENIED as MOOT because the Supreme Court of Virginia decided

---

[13]    Walker suggests that the state court's findings violate *Iowa v. Tovar*, 541 U.S. 77 (2004). In *Tovar*, the Supreme Court examined specifically, "the extent to which a trial judge, before accepting a guilty plea from an uncounseled defendant, must elaborate on the right to representation." *Id.* at 81. Besides the fact that *Tovar* recites general principles pertaining to the waiver of the right to counsel, Walker fails to explain how *Tovar* is applicable here.

17

his appeal on July 12, 2023.  Walker's claims will be DISMISSED, and his § 2254 Petition will

be DENIED.  The action will be DISMISSED.  A certificate of appealability will be DENIED.[14]

An appropriate Final Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to

Walker.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated:   December 4, 2023

---

[14]      An appeal may not be taken from the final order in a § 2254 proceeding unless a judge
issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A).  A COA will not issue
unless a prisoner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C.
§ 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether
(or, for that matter, agree that) the petition should have been resolved in a different manner or
that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v.
McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4
(1983)).  Walker fails to meet this standard.